**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANDRE' DREW, #00663-000,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )    **Case No. 20-cv-00337-JPG** |
| | ) |
| **DR. FIGUEREDO,** | ) |
| **MS. SHAW,** | ) |
| **MR. TRUE,** | ) |
| **MR. MURPHY,** | ) |
| **MS. WOMICK,** | ) |
| **MR. GRUTHIER,** | ) |
| **and MR. SPROUL,** | ) |
| | ) |
| **Defendants.** | ) |

**<u>MEMORANDUM & ORDER</u>**

**GILBERT, District Judge:**

Plaintiff Andre' Drew is an inmate in the custody of the Federal Bureau of Prisons (BOP) and is currently confined at the United States Penitentiary in Marion, Illinois (USP-Marion). He brings this action for the alleged denial of due process and equal protection by persons acting under color of federal authority pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the Administrative Procedures Act, 5 U.S.C. §§ 701-06. (Doc. 1). In the Complaint, Plaintiff claims he was unjustly punished for failing to participate in USP-Marion's residential drug abuse treatment program (RDAP) and/or drug education course by being denied job opportunities that include performance pay. (*Id*. at 1-11). He seeks declaratory judgment,[1] permanent injunctive relief, and backpay. (*Id*. at 8-9).

---

[1] In support of this request for relief, Plaintiff cites 28 U.S.C. §§ 2201-02 (governing declaratory judgment) and 42 U.S.C. § 2114 (governing toxic waste disposal), the latter of which is inapplicable.

The Complaint is subject to review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints and filter out non-meritorious claims.  28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations are liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-11): Plaintiff has been in BOP custody since 2007.  (*Id*. at 4-7).  During that time, he has been housed at three facilities: United States Penitentiary in Tucson, Arizona (USP-Tucson) (2007-15), United States Penitentiary in Mariana, Florida (USP-Mariana) (2015-17), and United States Penitentiary in Marion, Illinois (USP-Marion) (2017-present).  (*Id*.).  Although Plaintiff's claims arose at USP-Marion, he offers important background information in the Complaint.

Upon his arrival at USP-Tucson in 2007, Plaintiff's unit team informed him that he did not qualify as a candidate for mandatory RDAP or drug education at that facility based on the information contained in his presentence investigation report (PSR).  (*Id*. at 4).  However, he could volunteer for either program based on his marijuana use in 1973.  (*Id*.).  Plaintiff declined to participate in the program. He also tested negative each time he was screened for drug and alcohol use at that facility.  (*Id*.).

When he transferred to USP-Mariana in 2015, Plaintiff's unit team again offered him the option of participating in RDAP or a drug education course on a voluntary basis.  (*Id*. at 5).  The team explained that the prison's policy did not require him to participate in either program.  (*Id*.).

2

Plaintiff again declined the invitation to participate in these programs and tested negative each time he was screened for drug and alcohol use. (*Id.*).

When Plaintiff transferred to USP-Marion on April 3, 2017, he was assigned to N-Unit and remained there for twenty months without discussing RDAP or drug education with his unit team. However, Plaintiff spent his first week in the Special Housing Unit as punishment for resisting Defendant Murphy's efforts to spur a conflict between Plaintiff and his cellmate. Plaintiff later learned that Murphy classified him as an inmate with a substance abuse disorder sometime thereafter and, in doing so, obligated him to participate in RDAP or drug education. (*Id.*).

On July 15, 2017, Defendant Shaw informed Plaintiff that he was enrolled in a mandatory drug education course and was subject to sanctions for nonparticipation. Plaintiff apparently chose not to participate. When Plaintiff applied for a job on December 28, 2018, his application was rejected. Plaintiff finally learned why on July 10, 2019. Apparently, Defendants Figueredo and Shaw identified him in SENTRY as having "refused" to participate in the drug education course. He was thus ineligible for employment in the prison industries and for performance pay. (*Id.*).

When Plaintiff filed a grievance to address the matter, Defendant Womack reviewed Plaintiff's SENTRY file with him. Womack noted that Murphy listed Plaintiff as an inmate with a substance abuse order, triggering his obligation to participate in RDAP or drug education. Although Womack agreed that Plaintiff did not qualify as a candidate for either program, she took no action to correct Murphy's erroneous classification. Plaintiff was instead encouraged to address the matter with Figueredo. But, when Plaintiff submitted an inmate call-out request, Figueredo never contacted him. Plaintiff's grievances were denied at all levels by Figueredo, Gruthier, True, Sproul, and other high-ranking officials who are not named as defendants in this action. (*Id.* at 6).

3

On June 20, 2019, Plaintiff was assigned to work as a G-Unit orderly cleaning showers. Instead of performance pay of $32/month, Plaintiff earned maintenance pay of $5.25/month. This job and lower pay resulted from his lack of participation in the drug education course. (*Id.*).

Plaintiff maintains that his erroneous classification violates BOP Program Statement P5330.11 for the following reasons:

(1) the Drug Education course must be provided at the beginning of the inmate's sentence;

(2) the Warden has the authority to exempt an inmate from participation in Drug Education;

(3) there must be verification that can establish a pattern of substance abuse or dependence;

(4) there must be documentation to support a substance use disorder within the 12-month period before the inmate's arrest on his current offense; and

(5) recreational, social, or occasional use of alcohol and/or other drugs that do not rise to the level of excessive or abusive use does not provide the required verification of a substance use disorder.

(*Id.*) (citing BOP PS 5330.11). Moreover, 18 U.S.C. § 3621(e)(1)(b) provides that "every prisoner with a substance abuse problem has the opportunity to participate in appropriate substance abuse treatment." Section 3621(e)(5)(b) defines "eligible prisoner" as a prisoner who is determined by the BOP to have a substance abuse problem. Plaintiff's PSR mentions his use of marijuana with his victims, but it does not establish a substance abuse problem requiring mandatory participation in RDAP or drug education under the PS 5330.11 or 18 U.S.C. § 3621(e)(1)(b). Defendants' actions in erroneously classifying Plaintiff as an inmate with a substance abuse disorder thus violates his right to due process and equal protection of the law.

Based on the allegations, the Court finds it convenient to reorganize Plaintiff's claims into the following enumerated counts:

4

**Count 1:**    Fifth Amendment due process claim against Defendants pursuant to *Bivens* for classifying Plaintiff as having a substance abuse problem that required his participation in USP-Marion's RDAP and/or drug education course when his participation was not required under P.S. 5330.11 or 18 U.S.C. § 3621(e)(1)(b).

**Count 2:**    Fifth Amendment equal protection claim against Defendants pursuant to *Bivens* for classifying Plaintiff as having a substance abuse problem that required his participation in USP-Marion's RDAP and/or drug education when it was not mandatory under P.S. 5330.11 or 18 U.S.C. § 3621(e)(1)(b).

**Count 3:**    APA claim pursuant to 5 U.S.C. §§ 551, 701-06 arising from violations of BOP Program Statements 5330.11, 5251.06, and/or 8120.03.

**Any claim that is mentioned in the Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.[2]**

## Discussion

### Count 1

Fifth Amendment due process protections apply when a protected liberty or property interest is at stake. *Solomon v. Elsea*, 676 F.2d 282, 284 (7th Cir. 1982). However, inmates do not have a protected liberty interest in RDAP participation or the attendant early release benefit. *Walker v. Cross*, No. 13-cv-102-DRH-CJP, 2014 WL 285097, at *3 (S.D. Ill. 2014) (collecting cases). The Seventh Circuit Court of Appeals has also found no liberty or property interest in a prison job or pay. *See Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992) ("[T]here is no Constitutional right to compensation for [prison] work; compensation for prison labor is 'by the grace of the state.'") (quoting *Sigler v. Lowrie*, 404 F.2d 659, 661 (8th Cir. 1968)). *See also Brozych v. Litscher*, No. 02-C-0128-C, 2002 WL 32350066, at *4 (W.D. Wis. 2002) (two year limit on prison job and pay reduction without a hearing did not state due process claim). The Seventh Circuit recently extended this holding into the *Bivens* context, finding that it provides no

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

remedy for an inmate alleging a due process violation based on the loss of a prison job. *Grady v. Kinder*, 799 F. App'x 925 (7th Cir. 2020) (liberty or property interest did not arise from loss of prison job). In fact, the United States Supreme Court has long held that prison officials have discretion to determine whether an inmate may participate in RDAP and related drug education. *Lopez v. Davis*, 531 U.S. 230 (2001). Murphy's administrative decision to identify Plaintiff as an inmate with a substance abuse problem, Figueredo's and Shaw's subsequent decision to identify him in SENTRY as having refused to participate in the drug education course, and the remaining defendants' denial of his related grievances thus supports no Fifth Amendment due process claim. Count 1 shall be dismissed with prejudice for failure to state a claim.

### Count 2

A plaintiff may use *Bivens* to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment in some contexts and not others. *See, e.g., Davis v. Passman*, 442 U.S. 228 (1979) (implying *Bivens* action under the equal protection component of the Due Process Clause in the context of alleged gender discrimination in employment); *but see Schweiker v. Chilicky,* 487 U.S. 412 (1988) (refusing to imply *Bivens* action for alleged due process violations in the denial of Social Security disability benefits on the ground that a damages remedy was not included in the elaborate remedial scheme devised by Congress). Even if Plaintiff's claim presents one such context, it is meritless.

Although the Fifth Amendment does not contain an Equal Protection Clause, the Supreme Court has construed the Fifth Amendment to contain a guarantee of equal protection. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991). Fifth Amendment equal protection claims are analyzed under the same principles that apply to Fourteenth Amendment claims. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 217 (1995). The Equal Protection Clause does not

require the Government to treat everyone the same; different treatment is allowed if there is a rational basis for it. *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000). In order to state a claim in this context, a prisoner must generally show that he was treated differently than similarly-situated inmates based upon a suspect classification or a fundamental right. However, Plaintiff does not allege that he was required to participate in RDAP based on his membership in a suspect class or in violation of a fundamental right. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 601 n.1 (7th Cir. 2009); *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). He challenges the eligibility determination made by USP-Marion officials, after officials at two other BOP facilities deemed him ineligible to participate. At the same time, Plaintiff acknowledges that he was likely required to participate in drug education because of his past marijuana use—which offers at least some support for the decision to require drug education. A traditional equal protection claim is undeveloped and unsupported by the allegations in the Complaint.

The allegations also support no equal protection claim under a "class of one" theory. That theory applies if Plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Walker v. Samuels*, 543 F. App'x 610 (7th Cir. 2013) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Plaintiff makes no claim that he was treated differently than anyone else. The complaint does not present a class-of-one equal protection claim.

A prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that "state officials had purposefully and intentionally discriminated against him." *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)). Plaintiff's allegations fall short of this standard. The allegations merely describe a decision Plaintiff does not like. However,

"isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." *Shango*, 681 F.2d at 1104 (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980)). Likewise, inconsistencies in prison management do not necessarily constitute an equal protection claim. *Id.* (quoting *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978)). Plaintiff's claim that USP-Marion officials treated his substance abuse classification differently than USP-Tucson and USP-Mariana officials is an inconsistency that supports no equal protection claim. Count 2 shall be dismissed without prejudice.

### Count 3

Plaintiff asks this Court to review the decision deeming him eligible for participation in RDAP and drug education at USP-Marion pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-06, *et seq.* As a general rule, decisions regarding RDAP are not reviewable under the APA. *See* 18 U.S.C § 3625. *See Durance v. Cross*, No. 13-cv-926-CJP, 2014 WL 285095 (S.D. Ill. 2014) (citing *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("The plain language of this statute specifies that the judicial review provisions of the APA, 5 U.S.C. §§ 701-06, do not apply to 'any determination, decision, or order' made pursuant to 18 U.S.C. §§ 3621-24."). According to 18 U.S.C. § 3621, the BOP has authority to decide which prisoners are eligible to participate in RDAP, and 18 U.S.C. § 3625 prohibits judicial review of these determinations pursuant to the APA. *Stanko v. Federal Bureau of Prisons*, 2011 WL 3236388, at *2 (S.D. Ind. 2011) (citing *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004) (a placement decision, itself, is not subject to an APA challenge); *Orr v. Hawk*, 156 F.3d 651, 655 n.1 (6th Cir. 1998); *Thye v. United States*, 109 F.3d 127, 130 (2d Cir. 1997)).

Plaintiff does not gain traction with this claim by casting it as an APA claim based on a violation of BOP Program Statements 5330.11, 5251.06, and/or 8120.03. For one thing, he does

8

not develop his claim as it pertains to Program Statement 5251.06 or 8120.03.  Moreover, the APA provides no relief for non-compliance with policy statements.  *Grady v. Kinder*, 799 F. App'x 925 (7th Cir. 2020).   A BOP officer's failure to follow a program statement does not violate federal law.  *Witkowski v. Kallis*, No. 17-cv-1142, 2019 WL 148394, at *5 (C.D. Ill. 2019) (citing *Reeb*, 636 F.3d at 1227).  BOP program statements are more akin to policies or interpretive rules.  *Reno v. Koray*, 515 U.S. 50, 61 (1995).   Accordingly, Count 3 shall be dismissed with prejudice.

The Complaint does not survive screening and shall be dismissed.  This includes dismissal of Counts 1 and 3 with prejudice and dismissal of Count 2 without prejudice.  Plaintiff will have an opportunity to re-plead his Fifth Amendment equal protection claim in Count 2, if he wishes to do so in an Amended Complaint.  In addition, he may also plead a First Amendment retaliation claim, if the facts support a claim.[3]

### Disposition

**IT IS ORDERED** that the Complaint is **DISMISSED** without prejudice.  **COUNTS 1** and **3** are **DISMISSED** with prejudice against **ALL DEFENDANTS**, and **COUNT 2** is **DISMISSED** without prejudice against **ALL DEFENDANTS**, all for failure to state a claim for relief.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **November 5, 2020**.  Should Plaintiff fail to file a First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims.

---

[3] Although Plaintiff did not mention retaliation in the Complaint, it is possible that a First Amendment retaliation claim arises from the events described in the Complaint.  The defendants' adverse action against Plaintiff does not violate the Constitution when standing alone, but it may support a civil rights claim if the action was taken in retaliation for the exercise of a constitutionally protected right.  *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 [and, likewise *Bivens*] even if the act, when taken for different reasons would have been proper.").

FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).  The dismissal shall also count as one of Plaintiff's three allotted "strikes" under 28 U.S.C. § 1915(g).

When preparing his First Amended Complaint, Plaintiff is strongly encouraged to use the civil rights complaint form designed for use in this District.  He should label the form, "First Amended Complaint," and list the case number for this action (No. 20-cv-00337-JPG) on the first page.  To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).  The First Amended Complaint must stand on its own without reference to any previous pleading.  Plaintiff must re-file any exhibits he wishes the Court to consider.  The First Amended Complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether Plaintiff files a First Amended Complaint.  28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 10/15/2020**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**United States District Judge**